**RIGRODSKY & LONG, P.A.**
Seth D. Rigrodsky
Timothy J. MacFall
585 Stewart Avenue, Suite 304
Garden City, NY  11530
Tel.: (516) 683-3516
Fax: (302) 654-7530

Attorneys for Plaintiff

[Additional Counsel Listed on Signature Page]



**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COUNTY OF YORK EMPLOYEES RETIREMENT PLAN, Derivatively on Behalf of AVON PRODUCTS, INC., <br><br>         Plaintiff, <br><br>   vs. <br><br> W. DON CORNWELL, V. ANN HAILEY, FRED HASSAN, ANDREA JUNG, MARIA ELENA LAGOMASINO, ANN S. MOORE, PAUL S. PRESSLER, GARY M. RODKIN, PAULA STERN, LAWRENCE A. WEINBACH, EDWARD T. FOGARTY, STANLEY C. GAULT, SUSAN J. KROPF, <br><br>         Defendants, <br><br>   - and - <br><br> AVON PRODUCTS, INC., <br><br>         Nominal Defendant. | Civil Action No. _____ <br><br><br> **JURY TRIAL DEMANDED** |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff, County of York Employees Retirement Plan, respectfully submits this

Verified Shareholder Derivative Complaint against the defendants named herein based

upon personal knowledge as to its own actions, and as to all other matters, upon
information and belief based upon the investigation of counsel.

## INTRODUCTION

1.      This is a shareholder derivative action on behalf of Avon Products, Inc.
("Avon" or the "Company") against all of the members of the Board of Directors (the
"Board") of the Company and three of its former directors for violations of fiduciary duty
owed by them to the Company.  These violations, in turn, have substantially injured the
Company.

2.      As detailed herein, the Individual Defendants' (as defined herein)
conscious and systemic failure to implement and oversee the Company's compliance
with the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. §§ 78dd-1, *et seq.,* caused
substantial losses to the Company beginning no later than February 2006 and continuing
to the present through the foreseeable future (the "Relevant Period").  The Individual
Defendants knew about the requirement to comply with the FCPA, but ignored it with
catastrophic financial results to the Company.

3.      The Company's FCPA problems stem from the granting of a license by
the  Ministry of Commerce, People's Republic of China in February 2006 to Avon to
permit direct selling, *i.e.,* door-to-door marketing, which had been banned in China since
1998.  Three senior officials of Avon China and the head of Avon's internal audit unit in
New York have been accused of improperly providing travel, entertainment, and other
expenses in China to a senior official in the Ministry of Commerce and put on
administrative leave.

4.      This conduct has caused, and is continuing to cause, the Company

financial damages, including the substantial costs of engaging an outside law firm to investigate the FCPA violations. In addition, the Company has notified the U.S. Department of Justice ("DOJ") and the U.S. Securities and Exchange Commission ("SEC") about the investigation, and it is subject to and likely to incur substantial criminal and civil fines and other penalties. The Company also has incurred serious harm to its reputation and goodwill due to the adverse publicity resulting from the events described herein.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in that plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs. This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

6.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because, among other things, the principal place of business of nominal defendant Avon is located within this District and because many of the acts forming the basis for this action occurred in this District.

## THE PARTIES

**Plaintiff**

8.     Plaintiff, County of York Employees Retirement Plan, is a shareholder of Avon and was at all relevant times a shareholder of the Company. Plaintiff brings this action derivatively in the right of and for the benefit of the Company. Plaintiff will fairly and adequately represent the interests of the Company and its shareholders in enforcing

the rights of the Company.  Plaintiff is a citizen of Pennsylvania.

**Nominal Defendant**

9.      Nominal Defendant Avon is a corporation duly organized and existing under the laws of the State of New York.  The Company maintains its principal executive offices at 1345 Avenue of the Americas, New York, New York, 10020.  Avon creates, manufactures, and markets beauty and non-beauty-related products.  Its products are sold primarily through direct selling rather than through retail outlets.   The Company's reportable segments are based on geographic operations in six regions:  Latin America; North America; Central & Eastern Europe; Western Europe, Middle East, and Africa; Asia Pacific; and China. The Company is publicly owned, and its shares are traded on the New York Stock Exchange under the symbol "AVP."

**The Individual Defendants**

**Current Directors**

10.      W. Don Cornwell ("Cornwell") is and has been a director of Avon since 2002.  In addition, according to the Company's Annual Proxy Statement filed with the SEC on March 25, 2010 (the "2010 Proxy"), Cornwell serves on the Company's Audit and Finance Committees.  Upon information and belief, Cornwell is a citizen of New York.

11.      V. Ann Hailey ("Hailey") is and has been an Avon director since 2008.  According to the 2010 Proxy, Hailey serves on the Company's Audit Committee.  Upon information and belief, Hailey is a citizen of Ohio.

12.      Fred Hassan ("Hassan") is and has been a director of Avon since 1999.  According to the 2010 Proxy, Hassan serves as Chair of the Company's Nominating and

Corporate Governance Committee and on its Compensation Committee. Upon information and belief, Hassan is a citizen of New Jersey.

13.    Andrea Jung ("Jung") has occupied numerous high-level positions at Avon, including serving as Chairman of the Board since September 2001 and Chief Executive Officer ("CEO") since November 1999. According to the 2010 Proxy, Jung originally joined Avon in January 1994 as President, Product Marketing for Avon U.S., was elected to the Board in January 1998, and served as Avon's President from January 1998 to January 2001 and as its Chief Operating Officer ("COO") from July 1998 to November 1999. Additionally, in March 1997 she was elected an Executive Vice President of the Company, in concurrence with her position as President, Global Marketing, a position she held from July 1996 to the end of 1997. Upon information and belief, Jung is a citizen of New York.

14.    Maria Elena Lagomasino ("Lagomasino") is and has been a director of Avon since 2000. According to the 2010 Proxy, Lagomasino is Chair of the Compensation Committee and serves as a member of the Nominating and Corporate Governance Committee. Upon information and belief, Lagomasino is a citizen of Florida.

15.    Ann S. Moore ("Moore") is and has been a director of Avon since 1993. According to the 2010 Proxy, she serves on the Company's Compensation and Nominating and Corporate Governance Committees. Upon information and belief, Moore is a citizen of New York.

16.    Paul S. Pressler ("Pressler") is and has been an Avon director since 2005. According to the 2010 Proxy, Pressler is Chair of the Finance Committee and a member

of the Audit Committee.  Upon information and belief, Pressler is a citizen of New York.

17.     Gary M. Rodkin ("Rodkin") is and has been a director of Avon since 2007.  According to the 2010 Proxy, Rodkin is a member of the Compensation and Finance Committees.  Upon information and belief, Rodkin is a citizen of Connecticut.

18.     Paula Stern ("Stern") is and has been a director of Avon since 1997.  According to the 2010 Proxy, Stern is a member of the Nominating and Corporate Governance and Finance Committees.  Upon information and belief, Stern is a citizen of the District of Columbia.

19.     Lawrence A. Weinbach ("Weinbach") is and has been an Avon director since 1999.  According to the 2010 Proxy, Weinbach serves as Chair of the Audit Committee.  Upon information and belief, Weinbach is a citizen of New York.

**Former Directors**

20.     Edward T. Fogarty ("Fogarty") was an Avon director from 1995 through May 6, 2010, when he retired as a director.  During his time at Avon, Fogarty served on the Company's Audit and Finance Committees.  Upon information and belief, Fogarty is a citizen of Maine.

21.     Stanley C. Gault ("Gault") was an Avon director from 1985 through 2007, at which time he retired as a director.  While at Avon, Gault served as Chairman of the Board, in a non-executive capacity, from November 1999 until September 2001.  Gault was also Chair of the Nominating and Corporate Governance Committee and a member of the Compensation Committee.  Upon information and belief, Gault is a citizen of Florida.

22.     Susan J. Kropf ("Kropf") was an Avon director from January 1998

through 2006, at which time she retired as a director.  During her time at Avon, Kropf served as President and COO of the Company from January 2001 until July 2006, but remained with the Company until December 31, 2006 to assist with the transition of responsibilities.  In addition, Kropf served as Executive Vice President and COO, North America and Global Business Operations from November 1999 to January 2001, Executive Vice President, North America from March 1997 to January 2001, and prior to that, President, Avon U.S. and President, New and Emerging Markets.  Kropf originally joined Avon in 1970, where she held various positions in manufacturing, marketing, and product development.  Upon information and belief, Kropf is a citizen of New York.

23.     The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Current Director Defendants."

24.     The defendants identified in paragraphs 10 through 22 are collectively referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

25.     The Individual Defendants, because of their positions of control and authority as directors or officers of the Company, were able to and did, directly and indirectly, control or fail to control the wrongful acts complained of herein.  Because of their directorial and executive positions with the Company, each of the Individual Defendants had access to adverse non-public information about the financial condition and operations of the Company, including, without limitation, the misconduct of the other Individual Defendants.

26.     At all material times hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of the Company, and was at all

times acting within the course and scope of said agency.

27.    To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial, business, and corporate affairs of the Company. By virtue of such duties, the officers and directors of the Company were required, among other things, to:

a.    Manage, conduct, supervise, and direct the business affairs of the Company in accordance with the laws of the United States, the states and countries in which it conducted business, and the Company's charter and bylaws;

b.    Implement and oversee in good faith, and with loyalty, adequate internal controls sufficient to monitor and prevent the officers, directors, and employees of the Company from violating or acting in contravention to applicable federal and state laws, rules and regulations, and those of the countries in which it conducts business; and

c.    Refrain from using their status as directors or officers to the detriment of the Company and its shareholders.

28.    Certain Individual Defendants assumed additional fiduciary duties in connection with their service on the Board's Audit Committee, duties which they were required to exercise with loyalty and in good faith.  According to its charter, the Audit Committee is responsible for, among other things, "oversee[ing] . . . the Company's compliance with legal and regulatory requirements." http://www.avoncompany.com/investor/corporategovernance/pdf/audit_cmte_charter.pdf. The Audit Committee is required, among other things, to:

a.    Review with management the Company's compliance with applicable laws and regulations, the violation of which could have a material adverse effect on the Company's consolidated financial statements;

b.    Review with management and the independent auditors the Company's disclosure controls and procedures and its internal controls, including any major issues as to the adequacy of the Company's internal controls and any special audit steps adopted in light of any material control deficiencies;

c.    Review with management the Company's compliance and ethics program and receive reports from management at least annually on such program, including with respect to compliance by the Company's employees with the Company's code of conduct;

d.    Establish procedures for the receipt, retention, and treatment of complaints received by the Company regarding accounting, internal controls or auditing matters, and for confidential, anonymous submission by employees of the Company regarding questionable accounting or auditing matters; and

e.    Report regularly to the Board of Directors, which reports may include, in the Committee's judgment, any issues that may arise relating to the quality or integrity of the Company's . . . compliance with legal and regulatory requirements . . . .

29.    As alleged herein, each of the members of the Audit Committee violated their duties as members of the committee in that they consciously and systemically failed to implement and oversee in good faith, and with loyalty, adequate internal controls sufficient to monitor and prevent the officers, directors, and employees of the Company from likely violating or acting in contravention to applicable laws, rules, and regulations, especially high risk, high profile laws such as the FCPA.

30.    The Audit Committee is comprised of Current Director Defendants Cornwell, Hailey, Pressler, and Weinbach (Chair). Individual Defendant Fogarty was a member of the Audit Committee during his tenure on the Board.

## SUBSTANTIVE ALLEGATIONS

31.    Avon claims that it "is strongly committed to conducting its business in full compliance with all applicable laws, rules, and regulations in every country in which we do business, including . . . improper payments and bribery." http://responsibility.avoncompany. com/page-63-Compliance-with-Laws.

32.    The Company has a Code of Business Conduct & Ethics ("Ethics Code") that "applies to each member of the board and to every associate in every country in which Avon does business."   http://responsibility.avoncompany.com/page-60-Code-of-Conduct-and-Ethics.   The Ethics Code states the following about "Improper Foreign Payments:"

> The anti-bribery laws of many countries, including the U.S. Foreign Corrupt Practices Act ("FCPA"), prohibit Avon from offering or giving any money or other thing of value, directly or indirectly through a third party, to any foreign government official for the purpose of improperly obtaining or maintaining business or securing an improper advantage. A "thing of value" could include gifts or gratuities of any kind, travel and entertainment, offers of employment or contributions to charity. The term "government official" is very broad and includes any officer or employee of a government or government controlled entity (including government-controlled enterprises), or of a public international organization, or any political party, official thereof, or candidate for political office.
>
> Prohibited payments or offers of payment include consulting, broker's, finder's or other fees paid to third parties where there is reason to believe that any part of such fees will be distributed to, or for the benefit of, "government officials" for improper purposes. Deliberate ignorance of the purpose or nature of any such payment is not a defense. Avon requires third parties with whom it does business (such as Representatives, distributors, suppliers, vendors or other agents) to comply with this policy, the FCPA and other applicable laws.
>
> The FCPA and Avon policy do not bar certain reasonable and bona fide expenditures for travel or entertainment of foreign officials, as long as such travel or entertainment (i) observes the same standards of conduct under this Code (see "Improper Payments Generally" above); (ii) is permissible under the local laws of that country; (iii) is incurred for an official (and not, for example, for his or her family); (iv) is not lavish; (v) is infrequent, and (vi) is directly related to the promotion, demonstration

or explanation of the Company's products or services, or the execution or performance of a contract.

In addition, under limited circumstances, the FCPA permits facilitating payments or tips of nominal value to low level foreign government employees where it is the custom or practice in that country to expedite or assure the performance of routine governmental actions. However, the laws of some other countries prohibit such payments entirely – and Avon's policy is that it discourages facilitating payments, even if legal. *In no event shall such payments be offered or paid where the purpose is to obtain new business or the continuation of existing business*, or any favored treatment or special benefits to which the Company is not entitled.

Any payments approved under this policy for travel or entertainment of foreign officials or as a "facilitating payment" must be accurately recorded in the Company's books and records.

Because of the complexity of the FCPA and anti-corruption laws in other countries, and the significant criminal and civil penalties for violations, you must obtain advance approval from the Legal Department before offering to (i) pay any travel or entertainment expenses for government officials or (ii) offering to make any "facilitating payment."

http://www.avoncompany.com/investor/corporategovernance/pdf/code_of_conduct.pdf

(emphasis added).

33.     The FCPA defines a "foreign official" as "any officer or employee of a foreign government or any department, agency, or instrumentality thereof . . . or any person acting in an official capacity for or on behalf of any such government or department, agency, or instrumentality." 15 U.S.C. § 78dd-1(f)(1)(A). As such, U.S. companies doing business in China face particularly challenging compliance issues regarding the FCPA because many companies in China remain state-owned or state-controlled and any employee of such a firm may be considered a foreign official. In addition, businesses in China are highly regulated and often require numerous approvals from various levels of government officials in order to conduct business. Moreover, the culture in China encourages the provision of entertainment and other gifts as a means to

facilitate the securing of business.

34.    The Chinese government lifted its ban on direct selling in December 2005. In February 2006, Avon received the first direct-selling license from the Chinese government. According to news reports, the rapid approval of Avon's license application was attributed to Deng Zhan, who was deputy director of the Foreign Fund Division of the Chinese Ministry of Commerce and who was detained in September 2008 for allegedly accepting bribes.

35.    On a Form 8-K filed with the SEC on October 21, 2008, the Company announced that "it is voluntarily conducting an internal investigation of its China operations, focusing on compliance with the . . . FCPA." Avon revealed that "under the oversight of the Audit Committee," it "commenced in June 2008 an internal investigation after it received an allegation that certain travel, entertainment and other expenses may have been improperly incurred in connection with the Company's China operations." It noted that it "engaged the independent international law firm of Mayer Brown LLP" in order "[t]o lead the investigation." It also stated the Company had "voluntarily contacted" the SEC and DOJ "to advise both agencies that an internal investigation is underway."

36.    While the Company cautioned in the 8-K that the "internal investigation is in its early stage and no conclusion can be drawn at this time as to its outcome," it provided no explanation as to why investors were not advised of the investigation until approximately four months after it began.

37.    On a Form 10-Q for the second quarter of 2009, filed with the SEC on July 30, 2009, the Company provided additional information about the investigation. It

stated that the investigation now covered the FCPA "and related U.S. and foreign laws." Moreover, it disclosed that "[i]n order to evaluate our compliance efforts, we are also reviewing our practices relating to FCPA and related U.S. and foreign laws in additional countries."

38.     The Company stated in the 10-Q that "we cannot predict how the results of the investigation may impact our internal controls, business, and results of operations or financial condition."

39.     More information was provided by the Company in its Form 10-K for 2009, filed with the SEC on February 25, 2010.   It revealed that "[t]he internal investigation and compliance reviews, which started in China, are focused on reviewing certain expenses and books and records processes, including, but not limited to, travel, entertainment, gifts, and payments to third-party agents and others, in connection with our business dealings, directly or indirectly, with foreign governments and their employees."   It also said that it had signed "tolling agreements" with the SEC and DOJ and was cooperating with both agencies.

40.     Avon also admitted how much trouble it faced regarding the allegations:

> Any determination that our operations or activities are not in compliance with existing United States or foreign laws or regulations could result in the imposition of substantial fines, interruptions of business, termination of necessary licenses and permits, and other legal or equitable sanctions. Other legal or regulatory proceedings, as well as government investigations, which often involve complex legal issues and are subject to uncertainties, may also follow as a consequence. It is our policy to cooperate with U.S. and foreign government agencies and regulators, as appropriate, in connection with our investigations and compliance reviews.

\*                    \*                    \*

Any determination that our operations or activities are not in compliance with existing laws or regulations could result in the imposition of substantial fines, civil and criminal penalties, equitable remedies, including disgorgement, injunctive relief and other sanctions against us or our personnel. In addition, other countries in which we do business may initiate their own investigations and impose similar sanctions. Because the internal investigation and compliance reviews are ongoing, there can be no assurance as to how the resulting consequences, if any, may impact our internal controls, business, reputation, results of operations or financial condition.

41.     According to news reports, Avon placed four executives on administrative leave pending the outcome of the investigation. They are said to be S. K. Kao, President of Avon's China unit; Jimmy Beh, Chief Financial Officer of Avon's China unit; C. Q. Sun, head of corporate affairs and government relations for Avon's China unit; and Ian Rossetter, head of internal audit at Avon's corporate headquarters in New York.

42.     During a conference call with securities analysts held on April 30, 2010, Current Director Defendant Jung admitted that "people" had been put "on administrative leave," but denied they were "senior, executive-level officers of this company."

43.     Current Director Defendant Jung also disclosed during the conference call that the investigation was the result of possible FCPA allegations made "in the form of a letter (by an undisclosed correspondent) directly to me." Thus, the FCPA allegations were not detected by the Company's internal compliance or audit processes but rather by an individual who may or may not have been an Avon employee.

44.     The Company stated in a press release dated April 30, 2010, in which it disclosed its first quarter results that:

First-quarter revenue in China decreased 31% year over year. Units sold decreased 31% and Active Representatives were down 25%. Revenue from both Beauty Boutiques and direct selling declined significantly.

These declines reflect the fundamental challenges in the company's hybrid business model and complex evolution towards direct selling. The company is transitioning away from a hybrid model to one which focuses on direct selling and de-emphasizes retail. China had an operating loss of $10 million compared with $14 million in profit in last year's first quarter.

45.     The Company also disclosed that the cost of its internal investigation and ongoing review in China and elsewhere was expected to be between $85 million and $95 million in 2010, up from approximately $35 million in 2009.

46.     On June 1, 2010, in a Special Report entitled "U.S. Foreign Corrupt Practices Act – No Minor Matter," Fitch Ratings stated that Avon's FCPA investigation had "expanded to a dozen or more countries."

47.     The Fitch Special Report also contained the following ominous news regarding the Company:

> The cost of investigations and ongoing compliance can be sizeable, and each company's liquidity and metrics over the medium term would need to be considered. Avon, with $10 billion in 2009 revenues, had $120 million in FCF [Free Cash Flow]. In April 2010 the company disclosed that the cost of the investigation would be in the $85 million-$95 million range, up from $35 million in 2009. The additional cost of widening the investigation represents a significant percentage of the company's 2009 FCF. While the company has more than $1 billion in cash on hand, Fitch's expectation of moderate FCF in the medium term was part of the rationale for the downgrade to 'A-' from 'A' on Feb. 2, 2010. Additional layers of investigatory or compliance-related expenses could hamper FCF for Avon and other companies that violate the FCPA. Continued relative weakness in FCF and/or increased leverage typically can provide the impetus for a downgrade or change in outlook for many corporations.

48.     To date, just the cost of the FCPA investigation and review is closing in on $100 million. It also contributed to Fitch's downgrade of the Company from "A" to "A-" earlier in 2010. There is no question the Company faces future expenses of hundreds of millions of dollars in the form of, among other things, additional investigation fees, fines, profit disgorgement, RICO exposure, shareholder litigation,

legal defense fees, improving its governance and compliance programs, adverse publicity, and a continued weakening of its credit rating.

**DEMAND IS FUTILE**

49.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered by the Company because of breaches of fiduciary duty by the Individual Defendants.

50.    Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights. This action is not a collusive one designed to confer jurisdiction on this Court that it would otherwise not have.

51.    Plaintiff is the owner of Avon common stock and was the owner of such shares at all times relevant to the Individual Defendants' wrongful course of conduct alleged herein.

52.    Plaintiff has not made a demand on the Board of Directors to bring this cause of action because such a demand would be futile. Currently, the Company's Board consists of ten members:  Current Director Defendants Cornwell, Hailey, Hassan, Jung, Lagomasino, Moore, Pressler, Rodkin, Stern, and Weinbach.  As discussed in detail below, a majority of the current directors, *i.e.,* at least five of the ten Board members at the time this complaint was filed, have specific personal conflicts of interest or have demonstrated their individual inability to act independently and impartially.

### A. Company Officer - Current Director Defendant Jung

53.    Current Director Defendant Jung has been the Chairman and CEO of Avon since 2001. According the Company's DEF 14A filed with the SEC on March 25, 2010, Current Director Defendant Jung received nearly $9 million in compensation from

Avon in 2009.

54.     Current Director Defendant Jung is both an officer and a director of the Company and derives substantial compensation from her position as CEO.  As such, she is incapable of making an independent or disinterested decision as to whether to initiate suit on behalf of the Company.

### B.   The Audit Committee - Current Director Defendants Cornwell, Hailey, Pressler, and Weinbach

55.     Current Director Defendants Cornwell, Hailey, Pressler, and Weinbach are and have been members of the Audit Committee during the Relevant Period.  As such, they were required to "oversee . . . the Company's compliance with legal and regulatory requirements."

56.     The Audit Committee utterly and consciously failed to exercise its oversight responsibilities with respect to the Company's compliance with FCPA requirements.  It did not, among other things, review with management the Company's compliance with the FCPA; review with management the Company's internal controls, including any major issues as to the adequacy of the Company's internal controls regarding FCPA compliance; review with management the Company's compliance and ethics program regarding the FCPA; review with management compliance by the Company's employees with the Company's Code of Conduct, including its FCPA provisions; or take steps to require that the Company's FCPA compliance program, ethics program, and Code of Conduct placed special emphasis on the unique challenges arising from doing business in China.

57.     The Company's internal controls regarding the FCPA failed completely, in that they did not detect the likely violations of law by Avon's senior officials in China or

its head of internal audit in New York.  Moreover, the Company failed to detect likely non-compliance by these employees with its Code of Conduct.  Oversight of these safeguards was the responsibility of the Audit Committee.

58.    The Audit Committee's lack of oversight is especially egregious in light of certain "red flags" that were known or should have been known to it.  For example, Fitch Ratings cited at least 14 companies it rated—including such well known entities as Accenture, Alcoa, AstraZeneca, Bristol-Myers Squibb, Eli Lilly & Co., IBM, Johnson & Johnson, Pfizer, and Xerox—as having significant FCPA issues pending prior to February 2008, when the Company initiated its investigation.

59.    At the time the investigation commenced, at least three U.S. companies, AGA Medical Corp., Faro Technologies Inc., and Schnitzer Steel Industries, Inc., had recently pled guilty to violating the FCPA and agreed to significant monetary penalties for improper business activities in China.  Numerous sources were predicting continued vigorous enforcement of the FCPA by DOJ and the SEC, *including DOJ and the SEC themselves. See, e.g., Foreign Corrupt Practices Update:  FCPA Enforcement Continues Apace*       (Oct.         25,         2005),        available         at http://www.wilmerhale.com/files/Publication/f06384cf-0e84-4d32-88fc-9401ec23ac0f/ Presentation/PublicationAttachment/f00bfbee-9bf1-4448-99d4- 96ee5505a95b/FCPA%2010-25-051.pdf (Oct. 25, 2005); Joseph P. Covington, Larry P. Ellsworth & Iris E. Bennett, *White Collar Practice Alert:  FCPA Enforcement Trends* (Oct.         24,         2007),        available         at http://www.jenner.com/files/tbl_s20Publications%5CRelatedDocumentsPDFs1252%5C1 879%5CFCPAEnforcementTrends.pdf ("At a recent panel discussion of the District of

Columbia Bar Association, Mark Mendelsohn, the Deputy Chief of the Fraud Section at . . . DOJ, and Fredric Firestone, the Associate Director of Enforcement at the . . . SEC, addressed enforcement trends for the Foreign Corrupt Practices Act. Mendelsohn and Firestone confirmed that the FCPA has become a high priority for DOJ and SEC. This fact is also reflected in the numbers. For most of the thirty years since the FCPA's passage, there was an average of one case every few years. In 2005, however, there were five FCPA cases. In 2006, there were eight. Thus far in 2007, there have been ten cases. Moreover, Mendelsohn averred that there are at present approximately one hundred open FCPA matters, and that DOJ has increased its staffing specifically in the FCPA enforcement area. . . . On behalf of the SEC, Firestone agreed that the FCPA is a high priority for his agency.").

      60.    In addition, much had been written about the unique FCPA compliance issues arising from doing business in China before the Company commenced its investigation. *See, e.g.,* Judith A. Lee and James D. Slear, *Unique problems with FCPA compliance in the People's Republic of China*, Business Law Today (May/June 2007), available at http://www.abanet.org/buslaw/blt/2007-05-06/slear.shtml; Richard Meyer, *A Dim (Sum) Defense: China And The FCPA*, Compliance Week (July 24, 2007), available at http://www.complianceweek.com/article/3531/a-dim-sum-defense-china-and-the-fcpa; Tom Leander, *In China, You Better Watch Out:  Staying out of the Foreign Corrupt Practices Act penalty box requires a vigilant prevention program*, CFO (Mar. 20, 2006), available at http://www.cfo.com/article.cfm/5622331/c_2984287/?f=archives. Commentators have been unanimous in recommending extra precautions to avoid FCPA violations when doing business in China.  *See* Lee and Slear, *supra* ("To ensure

compliance, it is critical to develop, implement, and monitor internal controls that recognize the unique problems in the PRC before those problems create a need to consider self-reporting and/or remedial measures, or lead to enforcement actions").

61.     The intentional disregard of the aforementioned red flags by Current Director Defendants Cornwell, Hailey, Pressler, and Weinbach, as embodied by their utter conscious systemic failure to implement and oversee adequate internal controls sufficient to monitor and prevent the officers, directors, and employees, of the Company from likely violating or acting in contravention to the FCPA, particularly in China, constitutes a breach of their duties of good faith and loyalty such that they face a substantial likelihood of personal liability for their actions/inaction.

62.     Because they face a substantial likelihood of personal liability on their part, Current Director Defendants Cornwell, Hailey, Pressler, and Weinbach cannot impartially consider a demand on the Board to commence litigation against them.

63.     Current Director Defendants Cornwell, Hailey, Pressler, and Weinbach, along with Current Director Defendant Jung, constitute five of the ten members of Avon's Board, a majority, and thus demand is futile.

## COUNT I

### Against The Individual Defendants
### for Breach of Fiduciary Duty

64.     Based upon the allegations set forth in the preceding paragraphs, the Individual Defendants consciously and systemically failed to implement and oversee in good faith, and with loyalty, adequate internal controls sufficient to monitor and prevent the officers, directors, and employees of the Company from likely violating or acting in contravention to the FCPA and related legal requirements.

65.    Those Individual Defendants who participated in or had knowledge of the Company's likely illegal activities, and profited thereby, acted intentionally, thereby breaching their fiduciary duty of loyalty to the Company.

66.    The Individual Defendants abused the trust reposed in them by virtue of their positions and breached their fiduciary duty of loyalty by utterly abdicating their duty of oversight. As the result of their sustained and systematic failure to exercise oversight, the Individual Defendants caused or allowed the Company's business likely to be conducted in violation of the extensive legal requirements and regulations that were known to them.

67.    By reason of the foregoing, the Individual Defendants have proximately caused injury to the Company, which has been and will continue to be substantially damaged as the foreseeable result of their wrongful acts and omissions. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

68.    Plaintiff, on behalf of the Company, has no adequate remedy at law.

## COUNT II

### Against The Individual Defendants
### For Waste Of Corporate Assets

69.    Plaintiff repeats and re-alleges each of the allegations set forth above as if fully set forth herein.

70.    As a result of the Company's lack of internal controls, and by failing to consider properly the interests of the Company and its public shareholders by failing to conduct proper supervision, the Individual Defendants have caused and will cause the Company to waste valuable corporate assets by, among other things, incurring hundreds of millions of dollars of legal liability and/or expenses to investigate, defend, and resolve

the FCPA investigation and the inevitable criminal and civil litigation resulting from the Individual Defendants' wrongful actions.

71.   As a result of this waste of corporate assets, the Individual Defendants are liable to the Company.

72.   Plaintiff, on behalf of the Company, has no adequate remedy at law.

### PRAYER FOR RELIEF

**WHEREFORE,** plaintiff prays for judgment as follows:

A.   Declaring that the directors and officers named as Individual Defendants herein have breached their fiduciary duties as alleged herein;

B.   Requiring the Individual Defendants to pay to the Company the amounts by which it has been damaged or will be damaged by reason of the conduct complained of herein;

C.   Requiring the Individual Defendants to remit to the Company all of their salaries and other compensation received for the periods when they breached their duties;

D.   Ordering that the Individual Defendants and those under their supervision and control, refrain from the commission of such further unlawful activities as are alleged herein, and implement comprehensive corrective measures including a system of internal controls and procedures sufficient to prevent the repetition of the acts complained of herein which will rectify all such wrongs as have been committed and prevent their recurrence;

E.   Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.   Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury with respect to each claim in this Complaint.

Dated: August 6, 2010

RIGRODSKY & LONG, P.A.

By: _____

Seth D. Rigrodsky
sdr@rigrodskylong.com
Timothy J. MacFall
tjm@rigrodskylong.com
585 Stewart Avenue, Suite 304
Garden City, NY 11530
Tel.: (516) 683-3516
Fax: (302) 654-7530

COHEN PLACITELLA & ROTH
Stewart L. Cohen
scohen@cprlaw.com
Stuart J. Guber
sguber@cprlaw.com
Jillian A.S. Roman
jroman@cprlaw.com
Two Commerce Square
2001 Market St., Suite 2900
Philadelphia, PA 19103
Tel.: (215) 567-3500
Fax: (215) 567-6019

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COUNTY OF YORK EMPLOYEES
RETIREMENT PLAN, Derivatively on Behalf
of AVON PRODUCTS, INC.,

Plaintiff,

vs.

W. DON CORNWELL, V. ANN HAILEY,
FRED HASSAN, ANDREA JUNG, MARIA
ELENA LAGOMASINO, ANN S. MOORE,
PAUL S. PRESSLER, GARY M. RODKIN,
PAULA STERN, LAWRENCE A. WEINBACH,
EDWARD T. FOGARTY, STANLEY C.
GAULT, SUSAN J. KROPF,

Defendants,

- and -

AVON PRODUCTS, INC.,

Nominal Defendant.

Civil Action No. _____

## VERIFICATION

I, Robert P. Green, hereby declare as follows:

1.      My name is Robert P. Green.  I am the York County Controller and the
Secretary of the County of York Employees Retirement Plan ("York").  I make this
Verification in connection with the filing of a verified shareholder derivative complaint in
the above-captioned action.

2.      I am authorized to make legal decisions on behalf of York and I am
authorized to make this Verification on York's behalf.

3.     York currently holds shares of Avon Products, Inc. ("Avon" or the "Company") common stock and has held such shares continuously at all relevant times hereto.

4.     I verify that I have reviewed the foregoing verified shareholder derivative complaint and that the allegations as to York and its own actions are true and correct and all other allegations upon information and belief are true and correct.

5.     York has retained Cohen, Placitella & Roth and Rigrodsky & Long, P.A., in connection with this litigation.  I have reviewed and authorized the filing of a verified shareholder derivative complaint in the above-captioned action.  I am familiar with the allegations of the verified shareholder derivative complaint.

Dated: August **5**, 2010

_____
Robert P. Green
York County Controller and Secretary of
County of York Employees Retirement Plan